IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

ANGELA MORELLI,

          Plaintiff,

    vs.

FRANK BISIGNANO, Commissioner
of Social Security,[1]

          Defendant.

Case No. 24-cv-00579-DKW-RT

**ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Angela Morelli appeals the Commissioner of Social Security's denial of her claims for disability insurance and supplemental security benefits, asserting that the Administrative Law Judge (ALJ) erred when determining that she could perform jobs that exist in significant numbers in the national economy. Specifically, Morelli contends that the ALJ erred in finding that (1) a vocational expert's (VE) testimony regarding 21,000 telephone-solicitor jobs was consistent with the Dictionary of Occupational Titles (DOT), and (2) there existed a total of 38,000 jobs for the positions of food and beverage order clerk and charge account clerk, when Morelli's evidence shows only 1,800.   After careful review of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano was automatically substituted as the party-defendant in this action upon his appointment as the Commissioner of Social Security.

record, the parties' arguments, and relevant case law, the Court disagrees with

Morelli's contentions.   First, based upon the record as a whole, there is no

inconsistency between the DOT and the VE's testimony regarding the 21,000

telephone-solicitor jobs.   Second, Morelli neither adequately explains nor provides

"significant probative evidence" supporting her contention that only about 1,800

jobs exist in the national economy for food/beverage and charge account clerks.

Therefore, as more fully set forth below, the Court AFFIRMS the decision of the

Commissioner.

## BACKGROUND

I.    **Review of Disability Claims**

A five-step process exists for evaluating whether a person is disabled under

the Social Security Act (SSA).   20 C.F.R. § 404.1520; 20 C.F.R § 416.920.   First,

the claimant must demonstrate that she is not currently involved in any substantial,

gainful activity.   *Id*. §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b).   Second,

the claimant must show a medically severe impairment or combination of

impairments that significantly limit her physical or mental ability to do basic work

activities.   *Id*. §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c).   Third, if the

impairment matches or is equivalent to an established listing under the governing

regulations, the claimant is judged conclusively disabled. *Id*. §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work. *Id*. § 404.1520(e); § 416.920(e). The evaluation then proceeds to a fourth step, which requires the claimant to show her impairment, in light of the RFC, prevents her from performing work she performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f). If the claimant is able to perform her previous work, she is not disabled. *Id*. § 404.1520(f); § 416.920(f). If the claimant cannot perform her past work, though, the evaluation proceeds to a fifth step. *Id*. § 404.1520(a)(v), (g); §§ 416.920(a)(4)(v), (g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); § 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden

moves to the Commissioner).   If the Commissioner fails to meet this burden, the claimant is deemed disabled.   20 C.F.R. § 404.1520(g)(1); § 416.920(g)(1).

## II.    The Administrative Process

On August 13, 2024, the ALJ issued a decision finding Morelli not disabled for purposes of the SSA from the alleged onset date of November 3, 2021 through the date of the decision.   Administrative Record (AR) at 17, 30-31.   At Step One of the evaluation process, the ALJ determined that Morelli had not engaged in substantial gainful activity since November 3, 2021, the alleged onset date.   *Id.* at 19.   At Step Two, the ALJ determined that Morelli had the following severe impairments: cervical and lumbar degenerative disc disease; right shoulder labrum tear; right thumb arthritis; and left knee sprain.   *Id.* at 20-21   At Step Three, the ALJ determined that Morelli did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations.   *Id.* at 21-23.

Before reaching Step Four, the ALJ determined that Morelli had the RFC to perform "sedentary" work, except "occasionally climb ramps and stairs, stoop, balance, crouch and crawl but never climb ladders, ropes or scaffolds … occasionally reach overhead with the right upper extremity."   *Id.* at 23-28.   At Step Four, the ALJ determined that Morelli was unable to perform any past

relevant work as an informal server and dining room attendant    *Id*. at 29.   At Step

Five, the ALJ determined that there were jobs existing in significant numbers in

the national economy that Morelli could perform.   *Id*. at 29.   More specifically, a

VE testified that, in light of Morelli's RFC, age, education, and work experience,

she would be able to perform the jobs of: (1) food and beverage order clerk, with

21,000 jobs in the national economy; (2) charge account clerk, with 17,000 jobs in

the national economy; and (3) telephone solicitor, with 21,000 jobs in the national

economy.   *Id*. at 30.   The ALJ further determined that the 21,000 telephone-

solicitor jobs had an "SVP" or "Specific Vocational Preparation" level of 2.   *Id*.

In light of these findings, the ALJ determined that Morelli was not disabled under

the SSA.   *Id*. at 30-31.

On October 29, 2024, the Appeals Council denied Morelli's request for

review of the ALJ's decision, making that decision the final decision of the

Commissioner.   *Id*. at 1.   In doing so, the Appeals Council "considered" and

"exhibited" Morelli's "reasons" for appeal.   *Id*.   These "reasons" included

Morelli's argument that a total of 1,810 positions existed in the national economy

for food and beverage order clerk and charge account clerk, not 38,000 as the ALJ

found.   *Id*. at 349-350.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

Morelli argues that the ALJ's Step 5 analysis erred in two material respects. Dkt. No. 9 at 6-19.   First, the ALJ improperly determined that the VE's testimony regarding the position of telephone solicitor was consistent with the DOT. Second, the ALJ erred in finding that a total of 38,000 jobs existed in the national economy for the positions of food and beverage order clerk and charge account clerk.   The Court addresses these arguments in turn below.

## I.    **Telephone Solicitor**

Morelli argues that, contrary to the ALJ's determination, the VE's testimony regarding the position of telephone solicitor "conflict[ed]" with the DOT. Specifically, Morelli asserts that, although the ALJ found 21,000 telephone-solicitor jobs in the national economy with the SVP level of 2, in the DOT, the position of telephone solicitor reflects an SVP level of 3.   Morelli asserts that this is a "conflict" because, without making a finding about her "transferable skills", the ALJ could not determine that she could perform "semi-skilled work" such as work at the SVP level of 3.

Based upon the totality of the record, in particular the hearing transcript, there is no conflict or contradiction between the VE's testimony and the DOT. The relevant portion of that transcript is as follows:

> Telephone Solicitor: 299.357-014; sedentary. And though the DOT defines this job as SVP 3, recent data collected from the Department of Labor's Occupational Requirement Survey indicates that approximately 21,000 can be performed at the SVP 2 level.

AR at 62-63.   The VE further offered that her testimony was "consistent with the DOT" and her "education and experience as a vocational expert."   *Id*. at 63.   In the hearing decision, the ALJ then stated the following: "Telephone Solicitor, DOT 299.357-014, which is sedentary, unskilled work with an SVP of 2, and which exist in number of 21,000 jobs nationally."   *Id*. at 30.   The ALJ further stated that the VE's testimony was "consistent" with the DOT and that the VE "relied on her education and experience."   *Id*.

Morelli contends that the ALJ had a "duty to resolve" a purported "conflict" between the VE's testimony and the DOT because, while the DOT states that "telephone solicitor" has the SVP level of 3, the VE testified that certain telephone-solicitor jobs have the SVP level of 2.   There was no conflict for the ALJ to resolve, however, because the VE herself clarified the record. Specifically, the VE plainly acknowledged that the DOT defines "telephone solicitor" as having the SVP level of 3, <u>but</u>, "recent data" from the Department of Labor indicates that 21,000 telephone-solicitor jobs can be performed at the SVP level of 2.   If the VE had stopped her testimony in this regard at the "but" and the

ALJ had still found 21,000 telephone-solicitor jobs at the SVP level of 2, then

there arguably may have been a conflict in the ALJ's decision that needed

clarification.   That is not what happened, however, as the VE reconciled any

arguable discrepancy in her testimony.   In other words, contrary to Morelli's

contention in reply, the ALJ was not presented with "two explanations".   *See* Dkt.

No. 12 at 3.   There was clearly <u>one</u> explanation: the DOT defines telephone

solicitor as having the SVP level of 3, but, "recent data" from the Occupational

Requirements Survey states that there are 21,000 such jobs at the SVP level of 2.

As a result, there was simply nothing else for the ALJ to do in this regard.

Morelli also appears to challenge the VE's reliance upon the Occupational

Requirements Survey in testifying that 21,000 telephone-solicitor jobs exist at the

SVP level of 2.   *See* Dkt. No. 9 at 14 (arguing that the Occupational Requirements

Survey "is not one of the several administratively noticed publications of reliable

job information referenced in the Social Security regulations.").   As Morelli's

counsel should know, given that she cites them, those regulations clearly state that

the listed materials are merely "example[s]".   *See* 20 C.F.R. § 404.1566(d); 20

C.F.R. § 416.966(d).   Those regulations further state that, in classifying

occupations, the Commissioner uses "materials published by the Department of

Labor."   20 C.F.R. § 404.1568; 20 C.F.R. § 416.968.   And, here, there is no

contention that the Occupational Requirements Survey is <u>not</u> material published by the Department of Labor.   Moreover, and perhaps more importantly, nowhere in her briefing does Morelli dispute the VE's data, *i.e.*, at no point is it disputed that, according to the Department of Labor's "recent data", there are 21,000 telephone-solicitor jobs in the national economy at the SVP level of 2.

## II.   <u>Food/Beverage Order and Charge Account Clerks</u>

Morelli argues that, although the VE and the ALJ stated that there were 38,000 jobs in the national economy for the positions of food and beverage order clerk and charge account clerk, counsel's independent research reflects that there are only 1,810 such jobs.[2]   In response, the government asserts that the Court should not give meaningful weight to counsel's research because (1) she has not shown that it was produced "using the same methodology" as the VE and (2) counsel is an attorney with "no identified expertise in calculating job figures". Dkt. No. 11 at 3-4.

The Court agrees with the government.   Initially, some basic principles bear mention.   The parties appear to agree that, under Ninth Circuit case law, the fact that counsel, *i.e.*, not an expert in vocational matters, has attempted to produce

---

[2]According to Morelli, the breakdown is 770 food and beverage order clerk jobs, and 1,040 charge account clerk jobs.   Dkt. No. 9 at 16.

evidence for consideration on a vocational subject, alone, does not mean that the evidence should be ignored.   *See, e.g.*, *Buck v. Berryhill*, 869 F.3d 1040, 1047, 1051 (9th Cir. 2017).   Instead, the Ninth Circuit has explained that the inquiry is whether counsel's submission constitutes "significant probative evidence". *Kilpatrick v. Kijikazi*, 35 F.4th 1187, 1194 (9th Cir. 2022).   Further, in *Kilpatrick*, the Ninth Circuit found relevant to this inquiry the "methodology" used and the attorney's "expertise" in calculating job figures.   *Id*.

Here, Morelli's attorney's submission fails on both fronts.   First, Morelli's counsel professes no experience–let alone expertise–in calculating job figures in any fashion, let alone using the "Job Browser Pro" software she identifies as having been used by the VE.

Second, Morelli provides no basis, other than her counsel's conclusory say-so, that she followed the same or similar methodology as the one used by the VE. Moreover, the results Morelli's purported methodology has produced, when reviewed for more than a nanosecond, are perplexing.   As far as the Court can discern from her briefing, Morelli's methodology is simple enough: she inputted the DOT code for, say, food and beverage order clerk into Job Browser Pro and it spat out the number 770 jobs.   *See* Dkt. No. 9 at 16; *see also* AR at 355-359. There is no basis in the record, though, to find that such a process is the same or

similar to the one used by the VE.   Put another way, simply because the VE

testified to using Job Browser Pro does not mean that Morelli's methodology

matched or approximated the VE's.

Furthermore, Morelli's result—770 jobs for food and beverage order clerk—

is not a natural reading of her submission or how the Court views the same.[3]

Using, as an example, the data provided for food and beverage order clerk, *see* AR

at 351-352, the submission begins with a description of the DOT position and its

various guises, such as a "drive-in" clerk, followed by a description of what

appears to be a larger employment group of which food and beverage order clerk is

a part.   In relevant part, the submission later states the "NAICS [North American

Industry Classification System] Industries where this DOT Code is likely to be

employed", followed by a listing of four industries, including "[r]estaurants and

other eating places[.]"   After this, the real confusion begins.   The submission then

purportedly provides both the "[e]stimated %" for the larger group and the DOT,

---

[3]And, at a more basic level, it is not even clear that Job Browser Pro was used to produce the
data in the submission.   *See* AR at 351-354 (containing no express mention of "Job Browser
Pro").   Further, although the submission itself attempts to explain away this omission, *see id*.
at 349 n.2, contrary to that explanation's impression, "SkillTRAN LLC" is not the sole source of
the data.   Rather, at best, data from SkillTRAN LLC is one of five possible data sources.   *See
id*. at 352, 354.

along with the "N", which, presumably, is the job-number.[4]   The "[e]stimated %"
for the four industries ranges from 0.121 to 0.424, while the "N" for "[r]estaurants
and other eating places" is either 567, for the "OES Group", or 284 for "this
DOT".[5]   Finally, the submission provides the "TOTAL Industry Employment
Estimate" in the United States for the "DOT Code" as 770.   Because it is not
explained, presumably, this number is the addition of the "N" numbers for each of
the four industries set forth earlier in the submission.   From this, Morelli wishes
the Court to believe that there are only 770 food and beverage order clerk positions
in the United States and only 284 such positions in the restaurant industry.   This is
absurd on its face.   In other words, it is absurd to believe that only 284 jobs exist
in the entire United States for people who take food and beverage orders in a
restaurant.[6]   In light of the reference to "estimated % for this DOT", which is
asserted to be 0.212, it is also not a number supported by the submission, at least

---

[4]Unhelpfully, the submission does not explain to what the "[e]stimated %" relates.   Of course,
reading between the metaphorical lines, the Court could presume its meaning, but, ultimately,
that is not the Court's task and, even if it was, it would unlikely result in a presumption favorable
to Morelli's position.
[5]Again, the relationship, if any, between the "[e]stimated %" and the "N" number is not
explained.
[6]Morelli is, therefore, wrong to say that her submission is "not incomprehensible…."   Dkt.
No. 9 at 16.

not without a clear explanation from an *expert* in divining the meaning of such material.

Further, the Court disagrees with Morelli's contention that her evidence was submitted with "an explanation of how the numbers were generated."   Dkt. No. 9 at 16.   While Morelli does not cite the purported explanation, presumably she refers to a letter attached to her submission.   *See* AR at 355-358.   This letter, however, was not drafted by Morelli's counsel; rather, it was penned by a law firm in Oregon that has no evident association with this case.   In addition, the DOT job title used in the letter is for a "preparer", something which also has nothing to do with this case.   Finally, the information and data set forth in the letter is clearly and fundamentally different to the data set forth in Morelli's submission regarding food and beverage order and charge account clerks.   Put simply, they look nothing alike.

In this light, because Morelli's submission, at least to the extent she relies upon it without any supporting explanation from an individual with expertise in calculating job figures, is absurd and perplexing, the Court finds that it is not "significant probative evidence" sufficient to challenge the VE and ALJ's determinations.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Commissioner's decision, denying

Morelli's applications for disability insurance and supplemental security benefits,

is AFFIRMED.   The Clerk of Court is directed to enter judgment in favor of the

Commissioner and then close this case.

IT IS SO ORDERED.

DATED: July 11, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

15